Good morning. May it please the Court, Attorney Matthew Anderson appearing and arguing today on behalf of the Plaintiff's & Appellant's MCCath Empl. Health Care Plan. And if I may reserve two minutes for rebuttal, please. Yes, sir. Thank you. I'm here today to ask this Honorable Court to reverse the District Court's decision dismissing the case below with determination of ruling on the pleadings and on the bare-bone allegations without any fact-finding or discovery whatsoever. And that is an important distinction. And here's why. This case, as it's reported, is a subrogation case involving an ERISA plan that is governed by subrogation principles. And I don't think there's any question that the Plaintiff's & Appellant's Health Care Plan has a subrogation right with respect to the alleged medical malpractice that forms the basis of the underlying persecutory lawsuit that was filed by, originally, the deceased Ms. Stratton. Is this a discrimination case? There is no such case. That is correct, Your Honor. And the fact of the matter is, what I'm asking the Court to determine is whether or not, with respect to that case, I think the law is clear that my client, the health plan, maintains a persisting, subsisting subrogation claim with respect to that recovery that is received in that case. And the issue of the court is... I'm not sure why it's clear that you don't have such a subrogation right because there's no medical malpractice piece to that. Well, the key question here is whether the appellees can structure a settlement so as to avoid an evading subrogation claim which they have expressly done. This litigation, the underlying persecutory litigation, Your Honor, was pending for two years with the original plaintiff, Ms. Stratton. What happened to the estate? There was some kind of a thud down in the precinct. I think maybe the estate really did get money or something like that. Well, the... The estate is not in this case. Part of the issue is I don't know what happened to the estate because the case was dismissed so quickly where we couldn't find out whether the... Well, wasn't that virtually a missing several months between the time they evaded the complaint and the time that it was settled? Well, the recovery, Your Honor, part of the recovery was received by the appellees after this case was dismissed below. Part of the issue is with respect to the money. The estate's money, as you see, the estate is an amorphous concept. I mean, there is no... It's not a casual thing. The estate is a property interest. It's a... Could I interject a question, please? Sure. Didn't your client ever write to intervene in the malpractice suit after death and it was served as survival money? Yes, Your Honor. What the... Our client did intervene in the underlying state court action, did object, it's in the state court record, did object to the proposed settlement order that attempted to allocate the settlement to the wrongful death as opposed to survivorship. The client did object, did file counterclaims, and counterclaims with respect to that underlying interest. Judge, will this question be registered as a question to me, whether you could have asserted affirmatively a survivorship claim? I'm sorry. I misunderstood. Yes, the health plan does give a right to step into the shoes of misdreavant or of the deceived and innocent. Your Honor, we did assert counterclaims and cross-claims. I can't refer to those. What about his claim? An affirmative claim registered survivorship of the medical malpractice claim. Your Honor, the problem here is when you have a personal injury lawsuit like that, it gets to the point where when the settlement agreements are reached, there is a full release. So the athletes actually have identified the medical providers that are a subject of that medical malpractice. So it's also an area of law in terms of you don't find it that often because of the intricacies of the personal injury. They've litigated this case for three years, and it's a little bit of a difficult concept to attempt to actually now pursue a survivorship claim where they have the depositions, they have the transfers, and the health plan is, you know, and the federal risk law doesn't require the health plan to actually litigate the case. And it's entitled to a certain claim upon the proceeds, and specifically with respect to survivorship. Your Honor, if you could tell us one or two sentences, what is it that you think you can discover that would help you? Your Honor, that's a great question. I know it's a good question. That's why I asked you. Fair enough, fair enough. My line here is we need to know exactly where the damages arise from or originate from. We need to know what was part of that settlement, because in a personal injury action, as this Court is aware, the bottom line, the money grab, the fundamental, you know, the medical expenses, there's $100 of medical expenses that were paid here. That is the bottom line worst case from covering any personal injury action for medical expenses. They litigated this case for two years as a survivorship action with the deceased still alive on the scene. But they never litigated it as a survivorship action. They did. The point being is that at least they have it both ways. They did not use these medical expenses as part of the settlement that we do. I mean, a settlement is usually, you know, here's a certain amount of money I'll be out taking. I mean, how are you going to find out what I'm going to spend?  I'll answer that with an example, Your Honor. The suffragettes, and I've been doing this for a long time, and this is not a new concept. It's not a novel concept. The personal injury bar will attempt to recategorize or start some of their settlement so as to remove medical expenses from the actual settlement. I've had it happen to lots of consortium claims. The same thing has evolved from that claim. In a spouse who has a consortium claim, I've had personal injury attorneys will say, we start a settlement. We want absolutely anything to medical expenses. We want something that's a consortium claim. My response, Your Honor, is let me see your demand. And if your demand, your mediation, and your settlement discussions include discussions of those medical expenses, you can't have it both ways. We need to see what was part of those medical expenses. We have never received any settlement demands or offers by your request. We need to find out exactly what made up those settlement discussions. They litigated this case for two years, and they built their plan for damage. They built their case, and then all of a sudden, literally a few short months after Mr. Ratner, of course, he passed away, now all of a sudden, they've canceled their claim. They've completely done it about face, and they're damaged. No office space, no office space. She didn't have them off the case. She had survivors. They're damaged. They recovered their $1.5 million. They've recovered in their settlement that how they arrived at that settlement specifically impacts whether or not my client has the right to touch the claim that's part of the wrongful death claim. I don't want to take too much of your time. Maybe you're right. But I like it. I think it's as clear as I can from seeing your client that the right, of course, to recovery of anything that the state gets for medical expenses. The state didn't follow it closely, but they're not following it clean. As you were venturing into this, I'm sure you didn't notice at the time that every client that come in has the estate  Your concern is that, of course, you don't care what it is paid. I'm just saying that, you know, if it ever is, if you could help it, you need to at least get a release from the estate. I don't think you did. Well, it's not in the record, because in the case of asylum, I can represent to the court that one of the settlement agreements is an amendment of some. They preserve some money outside of wrongful death claims. It's nominal survey. It's like $5,000. There was a mistake to the release for all the things that the state may have done. I don't think so. I don't think so. I believe the police is all encompassing, including the employees and the beneficiaries. I don't know. Some of these things are simply referenced. I was looking. Either it was signed by Joe Blow, as the executor of the estate, or it wasn't. You all, I don't think the estate gave the police a request. It wasn't a complaint. I think that's a good point. Your Honor, I understand your point. I'm going to respectfully disagree, because the plan specifically, if I may read a court text, I know my time is almost finished. The right of subrogation shall not be affected or limited in any way by the manner in which the person or any person or entity responsible for paying any recovery attempts to designate or characterize the recovery. There's a case on that. Excuse me. These individuals were not responsible for paying any recovery, right? Well, the insert here is that they are responsible for carrying it. I don't know what happened in that mediation. They deluded it as to let's draft a settlement agreement, forget about the subrogation claim, and I'll give you a benefit and reduce the amount of our demand, because you're helping me during the subrogation claim. It's an old expression. You're not at the table. You're on the back end of the room. You have the right to be at the table. Your Honor, we did object. We did intervene and seek for action. We did not sit around. How else did you intervene? What are you talking about? Well, we intervened as an intervening defendant and filed both power claims and cross claims, and we did name all of the medical providers in the accident. When the matter settled with respect to the wrongful death claims, we specifically reserved our rights, and we did object in those underlying court documents. We objected to the settlement as being wrongful death versus privacy. So we did preserve that record, Your Honor. Okay. One last question. Do you know of any case in which an argument like this was handled? Can you say if it works? You said this happens frequently. So the question is, is any court ever behind such a thing? Yes. Your Honor, there's only a handful of cases, if I may very briefly, only a handful of cases addressed this issue. The Fourth Circuit has addressed this issue in Liberty Corp and the McGinnis case in 93 and 94. That not pressed on a risk preemption and whether the wrongful death statute was applicable. More recently, in favor of my highest position, Your Honor, the estate of Allen case 2002 out of the Eastern District, Arkansas, specifically held that a risk of preemption of wrongful death statute to the extent that wrongful settlement proceeds or proceeds received from a wrongful death claim would essentially allow monies to pass to beneficiaries without being subject to subrogation. I would urge the court to follow that. I really have the interest in supporting this case. Thank you. Thank you. No further questions. Yes, sir. Good morning, Your Honor. My name is Joseph Levy. I'm a police lawyer. My name is Jesse Henry, and I represent the Stratton family. In regards to this particular appeal, I think the key thing that's getting lost in the argument here is that what happened when Tracy Stratton died was a new cause of action was created. He's not getting lost. I think we understand that. Okay. So to say that the settlement is being recast to avoid subrogation interest is just an incorrect statement of Arizona's law in finding a distinction between wrongful death claims and survivor claims. Let me ask you two questions. Could the health plan here have, in itself, considered the survivor should claim? It can. It should have. The claim documents make it abundantly clear that the health plan has the right, under the assignment of the subrogation language, to pursue a claim on its own. It says it in black and white. It says that the plan is permitted to do it even if the covered person in this particular case would be the estate. She's not, too. And that's exactly what happened here is she died. A new claim was created. The statutory beneficiary is a new set of plaintiffs pursued there of wrongful death. So the only thing that's a little odd about it is that it was pursued as an amended claim in the same complaint in the same case. Well, it's not. I don't think it's fraudulent because they had to amend a complaint because they were not party plaintiffs. They could not substitute it because it would cause the actions of a new case. Sure, they could have filed a new case, but I don't think there's anything wrong with filing an amended complaint. Any new parties, the defendants remain the same. It comes out of the same transaction. All right, so the claim was just a case, and I think... It is a new case, but it arises out of the same transaction and occurrence, so I don't think there's anything wrong with filing an amended complaint. It's as if the original complaint never existed. It names the new parties, and I think what was important... Well, but isn't the consequence of going far in the same case is that when it sails, you're sailing that case. And where does that leave the subrogated claim? That leaves the subrogated claim with a suggestion of death that was filed by the plaintiffs in the underlying state court action, notifying the court that Tracy Stratton has died. Under Arizona law, they have a period of time to open an estate as an interested party with an assigned claim from the estate. They absolutely have the right and the ability to do that, and then they could have entered the action, and they should have entered the action when they did not. Under Arizona law, I believe it's Rule 22... I'm sorry, Rule... 18? The claim is dismissed after a suggestion of death if the estate does not enter an appearance and file claims in pursuit of the claim, and that's what happened. The plaintiff had the option to do that, and they elected not to. They elected not to pursue their subrogation claim, and instead they elected to rely on their reimbursement claim. The problem with their reimbursement claim is it does not attach to a wrongful death claim because there's no recovery for medical expenses in a wrongful death action. That's why I don't think any discovery is necessary here in why it was appropriate for the district court to dismiss the case outright in its entirety without discerning it. You discovered that in writing a letter to the settlement, the plaintiff said, oh, we want this amount of money because there was a $500,000 medical malpractice claim, and now we want another $500,000. Well, I can tell you that that would not work in a settlement situation. Why wouldn't it work? Because you cannot recover medical expenses. But still, in terms of the understanding and what was going on, the net result would be that the $500,000 would go away because no one else was there to claim it at that point. And if it was factored into the settlement negotiations, would that make a difference? I don't think it could ever be factored into the settlement negotiations because it cannot be recovered. That would be, in a settlement situation, you're dealing with defense counsel where they know you can't recover medical expenses, wrongful death claims in Arizona are about the loss to the statutory beneficiary. I suppose that's saying if you don't do that, we're going to offer a statement, no, after the survivor's complaint. But you can't, and the reason why they couldn't was because the claims by Tracy Stratton that were alive while she was still alive were dismissed from the case after the suggestion of death and offend in the plan failed to happen, and a person representative failed to have her as a party. At that point, you're outside of the statute of limitations. You should not bring that action back alive because the statute of limitations requires that there was no arrest to the defendant of having to pay for a survival action after the escape failed to commemorate a claim. I was thought we were brought in as counsel strictly for the purposes of this appeal. There was an attorney from the society. Yes. As part of seeing the attorney represented, he took very little notice of the case. Yes. So he's totally identifiable. I don't accuse him of anything, but the attorney who represented Mrs. Stratton and, of course, about the subject of the case, when she dies, the effect goes to the defendants who say, look guys, I'm not going to bring in the estate or be settled it for X dollars and take care of all the medical expenses because the estate is not going to file a cause of action and so all the money you're going to be paying under the case is going to go to the defendant. If those were the facts, if there be a cause of action against your clients or theoretically, I guess, if the attorney were to, I don't know, just make excursions, if those were the facts. No, I do not believe there would be. What happens at that point is the client still has the ability to come in, intervene, and pursue his own action and that's why I don't think there would be a cause of action there because they're not submissive to anything which people expect. They say at least one thing. And so it's true. Yeah. They had rice. They sat on their hands. Instead of pursuing them, they don't get to complain now that they made that mistake and didn't pursue those rights. And that's not a representation. And there's a recent Fourth Circuit opinion. That was my own opinion. I agree with it. But I believe the Fourth Circuit opinion that he was referring to was the Liberty Court opinion which held that the wrongful death statute for North Carolina was not preempted by ERISA because it either didn't relate to an ERISA plan or under the Supreme Court's ruling it saw that if it did relate, it was too tenuous and peripheral for ERISA preemption to apply. Now, the Illinois case, the Illinois District Court case he referred to, I'm not familiar with it, so I can't speak to the facts of it. It wasn't in the briefing, so I apologize if I'm not aware. But what I would say is that if the question is, is ERISA's Arizona's Wrongful Death Act, is it preempted by ERISA? I think the unequivocal answer is no. And the reason why is there's nothing in the Arizona Wrongful Death Act that has anything to do with an ERISA benefit plan as relating to it because these are claims that belong to the statutory beneficiaries, not to the person who suffered injury. I didn't ask your charge, but it seemed to me anyway. It was made in the lower court, Your Honor. It isn't made in this particular case. Okay. But I think, and I think, at least the way things have gone, I think the court understands that the focus is on what was assigned, and what was assigned was the covered person's right to recover medical expenses, and that doesn't exist in an Arizona Wrongful Death Act. And so the ERISA plan has no rights here. The district court made the right ruling in dismissing the claims outright in their entirety. There is some question as to, at least in the pleadings, as to whether dismissal of the estate was proper. And I want to touch on that real quick. And I do believe it was because the district court specifically found that the estate of Tracy Stratton was not a party to the Wrongful Death Act, and did not continue Miss Stratton's professional neglect of action after her death. On page 10 of the order, that portion of the order has not been appealed in this particular case, and that's what means any type of amendment that they could try to make to amend their complaint futile. And that's why the district court said that any type of amendment is futile, and that they were completely precluded and dismissed the entire case without prejudice. And so we're asking each of you to affirm the district court's decision in that particular regard. Thank you very much. Thank you. Okay. Thank you. Thank you. Very quick. I have two points that I want to end with. The plan document makes it unequivocally clear, without question, and the risk law provides the same thing, unequivocally clear, that if they structure a settlement, if you might need a moment. I'm sorry, I'm sorry, Your Honor. If they structure a settlement, the health plan absolutely has a right of subrogation. If they made more than a reference, Your Honor, to the medical expenses that were made here, if they made more than a reference in their settlement, it was used to the insurance defense carrier with respect to $500,000 of medical expenses. That's not a presentation. It's a physical practice that the bills were already completed by the judicial officials in the district court. I would like to take their word for it, but I'd like to see it. Well, Your Honor, if you said in other words that you had to do that, at least you did, because there was no way there was, you didn't even make your comments at all. Well, Your Honor, I think if they have these discussions, then we'll consider it. Yes, we don't have to deal with $500,000 of medical expenses. We can do so. I mean, it's still part of the, you know, the law is clearly the plan document, so it's there, and they can kind of search the settlement in that manner. And, you know, there's not much case law in this. There's only a few cases, which is so to say, in other courts, and now I'm close. That's where I'm pointing. I didn't sell it on the issue side, anyway. You're pretty secure. It's also possible that a clever plaintiff's lawyer seeing the situation says, two things, the client's the one who definitely has to take a look. But I'm not going to assume that he has a clear state, because that's not true. I'm telling you, we're going to slowly figure. There is going to be no claim for these creditable expenses. That's fine. It's also plain and pure benefit, but that's the issue. I'm sure you can believe her, but if you guys didn't protect your money, that's fine. We can do it. That's a fair point, Your Honor, and I will say this. There's been discussions about whether or not the health claim did protect your rights. We never dismissed or crossed the Iraq counterclaim in the state court action, so to the effect that we were pushed out of that. We filed counterclaims to cross-claims. We were not a party to any of that settlement. We did protect our interests in that state court action. Your Honor, I think your claim was your claim against the over-the-death conditions. That's what you were claiming against in that practice. Correct. There were settlement agreements identified, and they now, in one of the settlement agreements, they agreed to handle all responsibilities over liability or potentially claim damage arising out of this case that specifically references the segregation claims. So that piece of the case is not in our view. It's not in the focus. Well, fine. I'll show it. Thank you very much. The case of Medgar v. Stratton is submitted, and we thank the parties. Counsel, for your arguments, we will go to the next case of the day, which is United States v. Seward.
judges: Gould, Berzon, Garbis